FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ AUG 29 2012
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ABNER MOORE,

       Petitioner,

-against-

ROBERT ERCOLE, Superintendent
of Green Haven Correctional Facility,

       Respondent.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**

08-CV-04356 (ENV)

**VITALIANO, D.J.**

Pro se petitioner Abner Moore is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and Moore's habeas petition is dismissed.

## I. Background

Following a jury trial in Supreme Court, Kings County, petitioner was convicted of murder in the second degree, N.Y. Penal Law § 125.25[2] (depraved indifference murder), and robbery in the first degree, N.Y. Penal Law §160.15[3]. On December 18, 2003, Moore was sentenced to an indeterminate term of imprisonment of 25 years to life for the murder conviction to run concurrently with a definite term of 15 years for the robbery conviction.

### A. Events Leading to Arrest

On November 11, 2002, petitioner, then 16 years old, fatally attacked Marvin Johnson, 37, in Johnson's apartment.[1] Petitioner apparently learned earlier that day that Johnson had attempted to rape

---

[1] Because Moore was convicted, the Court recites the facts in the light most favorable to the verdict. See Garbutt v. Conway, 688 F.3d 79, 80 (2d Cir. 2012).

1

petitioner's girlfriend, Trina Jones. Angered by the news, petitioner and his friend, "Jimmy," first chased Johnson into a "People's Choice" store and fought with him. Later the same day, Moore and Jimmy went to Johnson's apartment and were let in by him. Petitioner then knocked Johnson to the floor and stomped on his head four or five times.

Shortly thereafter, Johnson's friend, Yacouba Konate, rapped on the door while petitioner and Jimmy were ransacking the apartment. Moore let Konate in and, then, with Jimmy's help, tried to rob him. During the ensuing struggle, petitioner stabbed Konate in the back with a knife he had been carrying. Moore and Jimmy took Konate's wallet, money, and keys and left the apartment.

A little after 10:00 pm that night, petitioner was arrested and brought to the 73rd precinct. As he was escorted into the interview room Moore blurted out that he had gone to Johnson's apartment to get back at Johnson for "fucking up" Trina. A detective asked petitioner if he wanted to make a statement, but petitioner said he wanted to rest. He rested in the interview room until about 9:00 am the next morning when he waived his <u>Miranda</u> rights and agreed to talk to the police. Moore made an oral statement that was transcribed by a detective and a videotaped statement in which he admitted to stomping on Johnson's head and stabbing and robbing Konate. In the videotaped statement, Moore claimed he was drunk at the time of the attack. (Dkt. No. 8-2 at 55-63, 85-89; Dkt. No. 9-5 at 42.)

Johnson died in the hospital two days later from the blunt impact head injuries inflicted by petitioner's attack on him. Konate's injuries were severe but not fatal.

**B.     The Verdict**

The trial court submitted intentional, depraved indifference, and felony murder charges to the jury, along with manslaughter in the first and second degree. The court instructed the jury to consider both intentional and depraved indifference murder and to acquit of both or convict of either, but not to convict of both. It also instructed the jury only to reach the felony murder and manslaughter charges if

2

the jury acquitted petitioner of the other murder counts. Regarding Konate, the court submitted attempted murder and first-degree robbery charges and instructed the jury to reach the robbery count only if it acquitted petitioner of the attempted murder count. The jury acquitted Moore of intentional murder of Johnson and attempted murder of Konate, but convicted him of depraved indifference murder of Johnson and first-degree robbery of Konate.

C.   **Post-Trial**

On appeal to the Appellate Division, Second Department, petitioner argued (1) the evidence was legally insufficient to support a conviction of depraved indifference murder because the evidence could only support a finding of intentional conduct and (2) his sentence was excessive. The Appellate Division upheld the jury verdict and affirmed the lower court's sentence, finding that petitioner's legal insufficiency claim was unpreserved and that his sentence was not excessive. People v. Moore, 45 A.D.3d 873, 845 N.Y.S.2d 753 (2d Dep't 2007). Exercising its factual review power, the Appellate Division also found that the conviction of depraved indifference murder was not against the weight of the evidence. Id. On January 24, 2008 the Court of Appeals denied petitioner's request for leave to appeal.[2] People v. Moore, 9 N.Y.3d 1036, 852 N.Y.S.2d 22 (2008).

---

[2] On July 13, 2009, petitioner filed a motion pro se to vacate his conviction, pursuant to N.Y. Criminal Procedure Law § 440.10. (Dkt. No. 9-5 at 71-81, Resp.'s Ex. F.) In his motion to vacate, petitioner argued that his statements to the police were inadmissible at trial because he was not properly advised of his Miranda rights prior to making them. Petitioner also argued his trial counsel was ineffective for failing to raise this claim. On January 4, 2010, Supreme Court, Kings County denied petitioner's motion to vacate and declined to rule on the merits after finding the claims were procedurally barred. (Dkt. No. 9-5 at 96-98, Resp.'s Ex. H.) Petitioner does not raise these claims in this petition.

3

On October 16, 2008, petitioner filed this petition, claiming the evidence at trial was legally insufficient to support a conviction of depraved indifference murder.[3] Petitioner also claims, as he did to the Appellate Division on direct appeal, that his failure to preserve the legal insufficiency claim was due to his trial counsel's ineffective assistance.

## II. **Standard of Review**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under 28 U.S.C. § 2254(a), a federal court is permitted to consider a petition for a writ of habeas corpus from a state prisoner only when the petition alleges "that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quoting 28 U.S.C. § 2254(a)). Section 2254(d) adds the requirement that, for any issue adjudicated on the merits in state court proceedings, the adjudication must be afforded what is commonly referred to as "AEDPA deference," i.e., the petition cannot be granted unless the state court adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington

---

[3] Petitioner has also submitted an application for appointment of counsel. Although district courts are empowered to appoint counsel to habeas petitioners, petitioners have no right to counsel. See Martinson v. United States Parole Comm'n., 02CIV.4913 (DLC)(DF), 2004 WL 203005, at *2 (S.D.N.Y. Feb. 2, 2004). After considering the relevant factors, see id., the Court finds the interest of justice does not require the appointment of counsel in this case. Petitioner's motion to appoint counsel is, therefore, denied.

4

v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781 (1979)).

As AEDPA provides, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of § 2254(d)(1) unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495 (2000) (O'Connor, J., for the Court, Part II). Similarly, a federal court is not free to issue a writ of habeas corpus under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413.

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933 (2007). Federal habeas courts are also required under AEDPA "to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Id. at 473–74 (quoting § 2254(e)(1)).

### III. Discussion

**A. Petitioner's Claim is Procedurally Barred**

A federal claim is procedurally barred from habeas corpus review if the claim was denied on an independent and adequate state law ground, such as a failure to adhere to New York's preservation of error rule. See Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007); see also Tavarez v. Artus, No. 09–CV–3716, 2012 WL 2872125, at *2 (E.D.N.Y. July 10, 2012). Petitioner raised the legal

5

insufficiency claim on direct appeal and the Appellate Division dismissed it as unpreserved with citation to the state's preservation rule, N.Y.Crim. Proc. Law § 470.05 [2]. Moore, 45 A.D.3d 873.

In New York, "an objection to the legal sufficiency of the evidence takes the form of a motion to dismiss. . . . and must be made 'at the close of the People's case.'" Fore v. Ercole, 594 F. Supp. 2d 281, 289 (E.D.N.Y. 2009) (quoting People v. Thomas, 36 N.Y.2d 514, 516, 330 N.E.2d 609, 610 (1975)). Further, "the preservation requirement compels that the argument be specifically directed at the alleged error." People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995) (internal quotation marks omitted); see also King v. Artus, 259 F. App'x 346, 347 (2d Cir. 2008). Petitioner did not advance a motion to dismiss or any other potentially equivalent motion or objection addressed specifically to the sufficiency of the evidence of depraved indifference murder. The Appellate Division's finding that the legal insufficiency claim is unpreserved bars Moore from raising the forgotten challenge here.

Apparently attempting to avoid the repercussions of his failure to preserve, petitioner posited in his reply brief to the Appellate Division that his trial counsel argued in summation that if the jury concluded petitioner acted recklessly, "it should convict of second-degree manslaughter rather than depraved indifference murder because the depravity element was not established." (Dkt. No. 9-5 at 65-66, Resp.'s Ex. D.) But, even assuming argument in summation could preserve a claim for state review, the referenced argument in summation was not directed specifically at legal insufficiency, let alone to the specific construct of that argument advanced here. See People v Hawkins, 11 N.Y.3d 484, 493, 872 N.Y.S.2d 395, 900 N.E.2d 946 (2008) (finding an argument that the state "failed to prove [defendant] acted with Depraved Indifference Murder . . . . did not alert the trial court to the argument now being advanced: that defendant acted intentionally, not recklessly, in killing the victim"). Nor was it made to the trial court seeking a dismissal as a matter of law. Bluntly, and more critically, the state courts have

6

determined as a matter of state law that, notwithstanding counsel's argument in summation, the point was unpreserved for appellate review. This Court is without authority to review that latter finding. The independent state law procedural bar it creates is fatal to Moore's federal habeas claim of legal insufficiency.

Yet, even if a claim is procedurally barred under state law, a federal court can still review the claim on its merits if "the habeas petitioner can show cause for the default and prejudice . . . or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 749 (internal quotation marks omitted). "A miscarriage of justice is demonstrated in extraordinary cases—for example, where a constitutional violation results in the conviction of an individual who is actually innocent." Fore v. Ercole, 594 F. Supp. 2d 281, 289 (E.D.N.Y. 2009) (citing Murray v. Carrier, 477 U.S. 478, 495, 106 S. Ct. 2639 (1986)). Moore offers the ineffectiveness of his trial counsel as cause for his failure to preserve the legal insufficiency claim. It is a trail unnecessary to explore. For, although the Appellate Division found petitioner's legal insufficiency claim unpreserved, it also found the claim meritless.[4] Moore, 45 A.D.3d 873. Where the Appellate Division has addressed a legal insufficiency claim despite it being unpreserved, a federal habeas applicant cannot argue that his trial counsel was ineffective for failing to preserve the claim for appeal. Bierenbaum v. Graham, 607 F.3d 36, 57 (2d Cir. 2010).

---

[4] Specifically, the Appellate Division found the verdict was not against the weight of the evidence. While a claim of legal insufficiency is distinct from a claim of a verdict against the weight of the evidence, see People v. Danielson, 9 N.Y.3d 342, 348-349, 849 N.Y.S.2d 480, 880 N.E.2d 1, (2007) (holding a "legally sufficient verdict can be against the weight of the evidence"), a determination that a verdict is *not* against the weight of the evidence necessarily includes a determination of legal sufficiency, see People v. Rogers, 94 A.D.3d 1246, 1250, n. 1, 42 N.Y.S.2d 260 (3d Dep't 2012) (explaining that "we assess the sufficiency of the evidence as part of our weight of the evidence review"); accord Danielson, 9 N.Y.3d at 349 ("Necessarily, in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt."). Thus, the Appellate Division necessarily reviewed and rejected the insufficiency claim.

Finally, assuming petitioner's ineffective assistance claim here was properly before the Court, it fails because the insufficiency of the evidence claim is so clearly devoid of merit, as detailed infra. That is, petitioner's counsel was not ineffective in failing to preserve the insufficiency claim because the claim had no hope of success and there could be no prejudice to Moore. See Strickland v. Washington, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052 (1984) (holding that to establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient," in that the representation "fell below an objective standard of reasonableness" under "prevailing professional norms" and (2) that "the deficient performance prejudiced the defense" in that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). With no viable ineffective assistance of counsel prop to reinvigorate it, Moore's claim, viewed solely from this perspective, is procedurally defaulted. Considering the record, there is no basis to disregard the Second Department's alternate factual finding that the evidence of depraved indifference murder was legally sufficient.

## B. Petitioner's Claim Fails on the Merits

Assuming arguendo that Moore's insufficiency claim is reviewable, it is without merit. Under New York law, a person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). At the time of petitioner's trial in 2003, New York law on depraved indifference murder was governed by People v. Register, 60 N.Y.2d 270, 276, 469 N.Y.S.2d 599, 457 N.E.2d 704 (1983), which held that the mens rea of the crime was recklessness, that the actus reus was "conduct creating a grave risk of death," and that "circumstances evincing a depraved indifference to human life" referred to "the factual setting in which the risk creating conduct must

8

occur." Subsequent changes in the definition of this crime are pertinent, though, because the Court must look to New York law as it existed at the time petitioner's conviction became final, not to the law as it existed at the time of conviction. See Flowers v. Fisher, 296 F. App'x 208, 210 (2d Cir. 2008). By the time Moore's conviction became final in April 2008, i.e., 90 days after the Court of Appeals denied his request for leave to appeal, see Fernandez v. Artuz, 402 F.3d 111, 112 (2d Cir. 2005), a significant shift had occurred. The requisite mens rea changed from recklessness to depraved indifference to human life. See Epps v. Poole, --- F.3d ----, 2012 WL 2345382, at *4 (2d Cir. June 21, 2012) (citing People v. Register, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704 (1983); People v. Hafeez, 100 N.Y.2d 253, 762 N.Y.S.2d 572, 792 N.E.2d 1060 (2003); People v. Gonzalez, 1 N.Y.3d 464, 775 N.Y.S.2d 224, 807 N.E.2d 273 (2004); People v. Payne, 3 N.Y.3d 266, 786 N.Y.S.2d 116, 819 N.E.2d 634 (2004); People v. Suarez, 6 N.Y.3d 202, 811 N.Y.S.2d 267, 844 N.E.2d 721 (2005); and People v. Feingold, 7 N.Y.3d 288, 819 N.Y.S.2d 691, 852 N.E.2d 1163 (2006)).

With reference to the newly applicable mens rea standard, Moore argues, essentially, that the facts adduced at trial can only support the conclusion that he intended to kill or seriously injure Johnson—not that he acted recklessly with depraved interference to human life. (Petitioner's Memorandum of Law at 6 ("These facts could support a verdict that petitioner intended to kill or to cause serious injury to the victim.").) That is, he advances "the somewhat perverse argument that he should be released from state custody because the evidence suggests he is in fact more culpable than the jury had found him to be." Epps, 2012 WL 2345382 at *1.

A federal habeas court reviewing the sufficiency of the evidence supporting a state-court criminal conviction must apply the standard set forth in Jackson v. Virginia, 443 U.S. 307, 319 99 S. Ct. 2781 (1979), which demands a determination of "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

9

crime beyond a reasonable doubt." Indeed, such review is typically performed with double deference, i.e., a first layer of deference because the federal court defers to the jury verdict and a second layer because the court defers to the state court's rejection of the habeas applicant's arguments. Epps, 2012 WL 2345382, at *3. Even more, in a case like this, where "the state appellate court's assessment of the evidence is intertwined with its interpretation of a complex and evolving body of state law," a third layer of deference applies. Id. (internal quotations and citations omitted).

In Moore's case, however, the applicable level of deference is academic because Moore's claim fails under any standard. Petitioner is correct only that a reasonable jury could have found him to have acted with the intent to kill Johnson. But, such a finding was not the only reasonable finding available on the trial record. A reasonable jury could have instead found that Moore acted out in a blind rage without intent to kill but aware that his violent actions could have fatal consequences. See Garbutt v. Conway, 668 F.3d 79, 82-83 (2d Cir. 2012) (affirming the denial of § 2254 petition making the same argument presented here and in which the petitioner had "pulled out [a] knife and began slashing" two people, causing the death of one). In reaching its finding that petitioner lacked the mens rea for intentional murder but possessed the mens rea for depraved indifference murder, the jury may have considered, for example, that Moore (1) fled without ensuring Johnson was dead; (2) had a knife and the opportunity to use it on Johnson, but did not; or (3) may have been drunk. Accordingly, even if Moore's legal insufficiency claim were somehow reviewable, it would fail.[5]

---

[5] Petitioner also appears to independently argue that the verdict was against the weight of evidence. That argument, of course, fails because a weight of the evidence claim is "not cognizable in a federal habeas corpus proceeding." Hutchinson v. Unger, No. 10–CV–2385 (MKB), 2012 WL 3027845, at *6 (E.D.N.Y. July 23, 2012) (citing Lemons v. Parrott, No. 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002)).

10

## IV. Conclusion

For the foregoing reasons, (1) Moore's application for counsel is denied and (2) his petition for habeas corpus is dismissed and the writ is denied. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253(c)(2). In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917 (1962).

The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
August 15, 2012

ERIC N. VITALIANO
United States District Judge